**STERLING COLORADO BEEF COMPANY, Plaintiff-Appellant,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION NO. 7, Defendant-Appellee.**

No. 83-2496.

United States Court of Appeals, Tenth Circuit.

July 15, 1985.

Earl K. Madsen of Bradley, Campbell & Carney, Golden, Colo. (Hope P. Josserand, Evergreen, Colo., with him on the brief), for plaintiff-appellant.

Martin D. Buckley of Hornbein, MacDonald, Fattor and Buckley, P.C., Denver, Colo., for defendant-appellee.

Before McKAY and SETH, Circuit Judges, and JENKINS, District Judge *.

McKAY, Circuit Judge.

The issue in this case is whether the arbitrator exceeded the authority accorded him under the collective bargaining agreement and whether the award rendered "draws its essence from the contract."

Plaintiff Sterling Colorado Beef Company brought this action under section 301(a) of the Labor Management Act, 29 U.S.C. § 185(a), and section 9 of the United States Arbitration Act, 9 U.S.C. § 9, to set aside an arbitration award in favor of defendant United Food and Commercial Workers Local No. 7. The union filed a counterclaim seeking enforcement of the award. The

parties agreed that there were no material facts in dispute and submitted the case on cross-motions for summary judgment. The district court held that the award "clearly draws its essence from the contract of the parties," granted the union's motion for summary judgment and upheld the arbitrator's award. Plaintiffs appeal, claiming that the district court applied the wrong standard of review and that the court erred in upholding the arbitration award.

The dispute between the parties centers around the proper interpretation and application of Article 15 of the collective bargaining agreement. Article 15.01 provides that "all regular full-time employees *who report for work on Monday* shall be guaranteed 36 hours of work that week, Monday through Friday, at straight pay." (emphasis added) Article 15.06 provides that the guarantee shall not apply "in any week when the Company's production is halted for any reason including but not limited to a strike or work stoppage by any union, physical catastrophe, power or fuel shortage or curtailment, equipment breakdown, government action, unavailability of live cattle necessary for production only due to lack of supply, acts of God, or lack of transportation facilities." At all relevant times the agreements stipulated that Sterling had the "sole and exclusive right" to schedule work hours of its employees. Article 7.

It is undisputed that Sterling directed its employees not to report for work on Monday, November 16, 1981, and Monday, November 30, 1981, and that the plant did not operate on those days. The company paid the employees only for time actually worked during those two weeks. Grievances were filed protesting the failure to pay the guarantee and demanding payment of the difference between the hours of work that were made available during the weeks in question and the guaranteed 36 hours.

* Honorable Bruce S. Jenkins, United States District Judge for the District of Utah, sitting by designation.

The company argued, before the arbitrator, that the weekly guarantee was inapplicable because the employees did not report for work on Monday of either week. The union claimed that the company could not avoid the guarantee simply by exercising its discretion not to schedule work on a Monday when the employees were ready and able to work. Rather, it claimed that the base pay guarantee could be avoided only for the grounds enumerated in Article 15.06.

The arbitrator rejected the company's contention that Article 15.01 and Article 7 permit it to avoid the guarantee by choosing, for any reason, not to schedule work on Monday. The arbitrator determined that section 15.01 "must be construed in the light of Article 15.06, just as Article 15.06 must be read in light of Article 15.-01" in order to ascertain the intention of the parties. The arbitrator found that

> a fair reading of Article 15.06 is that its subject, "the weekly and daily guarantee," shall not apply in any week when the company's production is halted in the circumstances stated. A reasonable further reading is that its subject, "the weekly and daily guarantee," *shall* apply in any week when the company's production is halted in circumstances which *are not* provided for in the article.

(emphasis in original). The arbitrator further noted that the management rights provision of the contract clearly states that *"except* as otherwise specifically provided in the agreement" the company has the sole and exclusive right to exercise the rights and functions of management. Thus, he found that the right to schedule work is limited by the weekly guarantee of Article 15.01. Accordingly, the arbitrator ruled that the company violated the weekly guarantee clause by failing to provide 36 hours of work or pay during the weeks in question.

▆ The company argues that the arbitrator's decision was in excess of his authority, was not plausible and had no foundation in reason or fact, was based on the arbitrator's own notions of industrial jus-

tice, and was based on other contracts in the industry, not the contract at issue. The bulk of these arguments are, in essence, an attempt to reargue the merits of the arbitrator's decision. As the district court correctly noted, the role of the courts in reviewing arbitral awards is limited to the determination of whether the arbitrator's award "draws its essence from the contract of the parties." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The arbitrator's award is not open to review on the merits. "The merits embrace not only asserted errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement." *Amalgamated Butcher Workmen v. Capitol Packing Co.,* 413 F.2d 668, 672 (10th Cir.1969). As the Supreme Court has stated, "it is the arbitrator's construction which is bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Corp.,* 363 U.S. at 599, 80 S.Ct. at 1362. The Court thus will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation. *International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc.,* 574 F.2d 497, 503 (10th Cir.1978).

The company maintains that the contract "clearly and unambiguously" gives it the right to avoid the 36-hour guarantee by simply not scheduling work on Monday, regardless of the reason. Thus, the company argues that the arbitrator's award must be vacated because it is contrary to the express language of the contract. The arbitrator and the district court, however,

found the contract to be ambiguous with respect to the circumstances which allow the company to avoid the weekly guarantee. We agree that the contract is ambiguous because of the interrelation between Articles 7, 15.01 and 15.06. This case thus is distinguishable from *Mistletoe Express Service v. Motor Expressman's Union*, 566 F.2d 692 (10th Cir.1977), on which plaintiff relies. In *Mistletoe*, the contract expressly stated that the company had just cause to discharge an employee for failure to settle bills within twenty-four hours. The arbitrator held that the company had not had just cause to discharge one of its employees, despite the fact that it was undisputed that the employee had failed to settle his bills within twenty-four hours. The court vacated the arbitration award, since "an arbitration award will not be upheld when it contravenes the express language of the labor contract." *Mistletoe*, 566 F.2d at 695.

■ In the present case, Article 15.01 states that the guarantees need only be paid to employees who report to work on Monday. However, we agree with the arbitrator that this provision alone does not answer the question of whether the guarantee must be paid when the employees are ready and able to work on Monday, but are directed not to do so by the company. As the arbitrator found, the contract is ambiguous concerning the circumstances under which the company can avoid the guarantee simply by refusing to schedule work on Monday. This ambiguity was given to the arbitrator to resolve, and the arbitrator agreed with the union's interpretation. Whether or not this court agrees with the arbitrator's findings, we cannot reverse it if the arbitrator stayed within the confines of the agreement and the submitted grievance. *Kane Gas Light and Heating v. International Brotherhood of Firemen and Oilers*, 687 F.2d 673, 681 (3d Cir.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1251, 75 L.Ed.2d 480.

■ The company argues that the arbitrator exceeded his authority by looking to matters outside the contract, including other labor agreements and arbitral decisions. The arbitration decision contains only one reference to arbitral decisions in the industry, and does not indicate reliance on them. In addition, the arbitrator's source of law is not, contrary to the company's argument, confined to the express provisions of the contract. The "industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Warrior and Gulf Navigation*, 363 U.S. at 581–82, 80 S.Ct. at 1352. The arbitrator's decision is based on his interpretation of the relevant contract provisions and other permissible considerations and his decision is, therefore, rooted in the contract. *Campo Machinery Co. v. Local Lodge No. 1926*, 536 F.2d 330 (10th Cir.1976).

■ We agree with the district court that the arbitrator's award is a permissible interpretation of the contract provisions and a reasonable application of those provisions to the facts of this case. The arbitrator's opinion clearly demonstrates that he carefully weighed the contract language, the evidence and the arguments of counsel, and then reached a conclusion which is supported by specific findings. The arbitral award draws its essence from the contract and cannot be overturned.

The final issue is the Union's request for a sanction of attorney's fees under Rule 38 against the company for filing a frivolous appeal. While we do not find the company's arguments persuasive, we do not find them so frivolous as to warrant sanctions under Rule 38. Therefore the Union's request for attorney's fees is denied.

The decision of the district court is in all respects affirmed.